UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL B.,

        Plaintiff,                     **DECISION AND ORDER**

    v.

                                                  6:23-CV-06655 EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Daniel B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff filed his application for DIB on November 13, 2019. (Dkt. 5 at 49, 347-53).[1] In his application, Plaintiff alleged disability beginning November 6, 2019. (*Id.* at 49, 347). Plaintiff's application was initially denied on February 20, 2020, and upon reconsideration on July 9, 2020. (*Id.* at 49, 141, 150). A telephone hearing was held before administrative law judge ("ALJ") Brian Kane on January 14, 2022 (*id.* at 103-40), and continued on June 9, 2022 (*id.* at 68-104). On August 3, 2022, the ALJ issued an unfavorable decision. (*Id.* at 49-62). Plaintiff requested Appeals Council review; his request was denied on October 4, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2024. (Dkt. 5 at 51). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 6, 2019, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: unspecified anxiety disorder; past record of unspecified psychotic disorder; and paranoid and delusional disorder. (*Id.* at 52). The ALJ further found that Plaintiff's alcohol use disorder was non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.03, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 52-54).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except that Plaintiff:

> must avoid regular interactions with coworkers; he could have occasional interactions but not work with others in a team; would be limited to avoid work stress, meaning avoid multitasking or limited to simple work, involving simple decision making, meaning one or two step decisions; and no production level time parameters in addition to simple, repetitive, and manual labor work.

(*Id.* at 54). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id.* at 61).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, window; pipe stripper; sweeper-cleaner, industrial; farmworker, diversified crops II; cleaner, housekeeping; and cleaner, commercial or industrial. (*Id.* at 62). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the RFC is not supported by substantial evidence because the ALJ erred in his assessment of medical opinion evidence from independent medical expert Faren Akins, Ph.D., J.D. (Dkt. 6-1 at 9-14). The Court has considered this argument and, for the reasons discussed below, finds it without merit.

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Dr. Akins, the independent medical examiner, provided expert testimony at Plaintiff's hearing on June 9, 2022. (Dkt. 5 at 81-99). Dr. Akins testified that Plaintiff had no limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or

maintaining pace; and a moderate limitation in adapting or managing oneself. (*Id.* at 93). Given the moderate limitation in the ability to interact with others, Dr. Akins testified that Plaintiff "should probably avoid employment where there's regular interaction with coworkers, supervisors or the general public. In fact, I think just putting it simply, less is more and being around other people sometimes sparks problems with the triggering of the delusions and the paranoia." (*Id.* at 95). He continued, "So, only occasional interaction and probably then limiting it just to a few coworkers in which there may not be actual interaction, but just they're in the same general vicinity. So, I think that would be one of the limitations. And, the, under B4, adaptive functioning is not going to be entirely adequate given the problems with the paranoia and the delusional thinking. So, I would think that the less stressful environment, the better." (*Id.* at 95-96). In describing work stress, Dr. Akins stated, "[a]nything where there's multi-tasking required or where there's time parameters associated." (*Id.* at 96). He indicated that "[m]anual labor type work might actually be beneficial rather than having the person sheltered at home and, as a result, not being exposed to an environment that might actually help improve his condition." (*Id.*).

The ALJ discussed Dr. Akin's opinions in the written determination:

> Specifically, Dr. Akins testified that medical records do not show more than mild limitation in 2018 after he began receiving treatment, and that medical records and his return to work both suggest improvement from medicine at that time. Based on medical records since November 2019, he concluded that the claimant's conditions satisfy some of the "A" criteria of listings 12.03 and 12.04, but not the "B" or "C" criteria, so they do not meet or equal any listed impairment. He opined that the claimant should avoid regular interaction with others, but is able to tolerate occasional interaction, and is able to tolerate limited stress at work, such as no multitasking or work with

> time parameters. He said the claimant is able to tolerate simple, repetitive, and manual work, and make simple decisions.
>
> This opinion is persuasive. Despite the lack of medical records since November 2019, Dr. Akins provided good support and explanation for his findings. His findings are consistent with mental health records prior to November 2019, which show serious psychiatric illness in the context of chronic treatment non-compliance, but also good response to limited use of medication, as evidenced by his return to work and treatment notes around this time. (Exhibits 3F; and 4F). His opinion mostly matches the reports from Dr. Deneen and Dr. Brownfield, though as already discussed, it seems likely that he continues to experience moderate limitations given his lack of treatment and the paranoia and delusions expressed in his letter. (Exhibits 24E; 6F; and 12F).

(*Id.* at 59).

Plaintiff contends that the ALJ failed to properly reconcile a conclusion that Dr. Akins' opinion that Plaintiff had moderate limitations in interacting with others was persuasive while at the same time, formulating an RFC that only provided that Plaintiff must avoid regular interactions with coworkers and could have occasional interactions but not work with others in a team. In other words, Plaintiff contends that Dr. Akins' opinion that he "should probably avoid employment where there is regular interaction with coworkers, supervisors or the general public" is broader than the RFC which only limits Plaintiff to avoiding regular interactions with coworkers and working in a team but makes no mention of the interaction with supervisors and the public. Plaintiff argues that the "ALJ's failure to provide an explanation for why limitations from Dr Akins' 'persuasive' opinion were left out of the RFC finding was error." (Dkt. 6-1 at 12).

As a threshold matter, the RFC need not mirror any one medical opinion. *See Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10

(2d Cir. 2020)); *see also Jaret B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0896-CJS, 2024 WL 1014051, at *6 (W.D.N.Y. Mar. 8, 2024) ("Moreover, an ALJ is not required to adopt every limitation contained in a medical opinion even where he finds the opinion overall to be persuasive."); *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp. 3d 312, 323 (W.D.N.Y. 2024) ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions."); *Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

"Instead, the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Emmett K. v. Comm'r of Soc. Sec.*, No. 23-CV-6036-FPG, 2024 WL 445504, at *2 (W.D.N.Y. Feb. 6, 2024) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination

is supported by substantial evidence and adequately explains how he arrived at his determination of the RFC.

In addition to the testimony and opinions of Dr. Akins, the ALJ considered the opinion of Todd Deneen, Ph.D., who conducted a consultative psychological evaluation on February 5, 2020. (Dkt. 5 at 640-44). Dr. Deneen concluded that Plaintiff had a mild limitation with interacting adequately with supervisors, coworkers, and the public. (*Id.* at 642).

The ALJ found Dr. Deneen's opinion moderately persuasive, in part due to Plaintiff's and Dr. Akins' testimony:

> This opinion is moderately persuasive. At the second hearing, the claimant testified that he was calm at this evaluation, but had only been taking his medication for two weeks and was told it would take four weeks to kick in. He later stopped taking this medication due to side effects. However, there are no medical records to support this, only the claimant's statements at the hearing. Dr. Deneen's assessment matches his clinical observations, but the overall medical record supports somewhat greater deficits, especially in the areas of social interaction and adapting or managing oneself. As seen above, the claimant experienced serious psychiatric symptoms in 2018, but his condition improved with medication, despite non-compliance and somewhat questionable sobriety at the time. (Exhibit 3F). He returned to work and did well for some months, but his compliance with treatment decreased, which was followed by increased anxiety and delusions. (Exhibit 4F). The claimant has received no significant mental health care since the alleged onset date but remains able to perform a robust range of activities. In light of this evidence, as well as his competent presentation at the hearing and subsequent medical records discussed below, the longitudinal record supports a capacity for work that involves limited social interaction and stress, as described by Dr. Akins at the second hearing.

(*Id.* at 58).

The ALJ also addressed the opinion of Adam Brownfield, Ph.D., who conducted a consultative psychological evaluation on February 7, 2022. (*Id.* at 675-81). Dr.

Brownfield opined in relevant part that Plaintiff is "mildly limited in interacting adequately with supervisors, co-workers, and the public and regulating emotions, controlling behavior, and maintaining well-being." (*Id.* at 677). The ALJ found Dr. Brownfield's opinions moderately persuasive, concluding that "Dr. Brownfield did not observe or document any mental deficits during their evaluation, but his opinion is consistent with Dr. Deneen's opinion. However, mental health records show greater dysfunction prior to the alleged onset date, with improvement from limited treatment, but also no significant treatment since the alleged onset date. (Exhibits 3F; and 4F). Therefore, it is reasonable to conclude that the claimant continues to experience moderate limitations in the areas of social functioning and adapting or managing oneself, consistent with the opinion of Dr. Akins at the second hearing." (*Id.* at 59).

The ALJ also considered the opinions of State agency psychological consultants L. Dekeon, Ph.D., and J. May, Ph.D., who opined that Plaintiff's mental impairments are non-severe. (*Id.* at 142-49, 151-59). The State agency consultants opined that Plaintiff had no limitations in understanding, remembering, and applying information and mild limitations in interacting with others, concentrating, persisting, or maintaining pace, and in the ability to adapt or manage oneself. (*Id.* at 156). The ALJ explained his reasoning for finding these opinions to be less persuasive:

> These consultants provided significant support for their findings, including treatment notes, the report from Dr. Deneen, and the claimant's reported activities. Medical records support a finding of no limitation in the area of understanding, remembering, or applying information, and mild limitation in concentration, persistence, or pace, including the opinions of Dr. Deneen and Dr. Brownfield. (Exhibits 6F; and 12F). However, given the evidence of ongoing anxiety, paranoia, and delusions, combined with a lack of mental health care, especially since the alleged onset date, medical records support

moderate limitations in the claimant's ability to interact with others and cope with stress, including treatment notes prior to November 2019 and the opinion of Dr. Akins. (Exhibits 3F; 4F; and Hearing Testimony).

(*Id.* at 60).

The ALJ also addressed Plaintiff's testimony, which he considered in connection with his conclusion that Plaintiff's limitation in interacting with others was moderate. Specifically, the ALJ stated:

> He reported an inability to remain in public for extended periods and said he stopped talking to old acquaintances due to trust issues. However, the claimant also denied having any problems getting along with other people and denied ever losing a job for this reason. Moreover, he acknowledged the ability to perform activities that involve significant social interaction as already seen, like driving and shopping. The claimant does less grocery shopping now and usually goes with his wife, but he occasionally shops by himself for brief periods. He said he goes to cookouts, church, and on vacations. The claimant said he goes to visit family at their homes. (Exhibit 11E). At the first hearing, the claimant said he no longer shops very much and had only gone to Wegman's twice in the last two years. He does not go to Walmart by himself and does not attend his children's school events. He stopped using social media due to paranoia and said he does not socialize outside of his family. (Hearing Testimony). Dr. Akins found mild limitation in this area of functioning. (Hearing Testimony). Medical providers document greater signs of social deficits, like an abnormal mood/affect and paranoid/delusional thoughts, but mostly before the alleged onset date. One consultative examiner found none or mild limitation in this area, while the other found moderate. (Exhibits 6F; and 12F). Given the claimant's lack of treatment since the alleged onset date, it seems likely that he continues to have moderate social dysfunction.

(*Id.* at 52-53).

It is clear that the ALJ conducted a thorough review of the medical evidence. To be sure, a more detailed explanation of why the RFC limited Plaintiff's interaction with

coworkers without specifying the interaction permitted with supervisors and the public would have been beneficial and provided greater clarity.

But importantly, even to the extent that the omission of a limitation relating to supervisors and the public was error, any such error is harmless in this case and would not have affected the outcome. *Young v. Kijakazi*, No. 20-CV-03604 (SDA), 2021 WL 4148733, at *11 (S.D.N.Y. Sept. 13, 2021) ("However, even assuming *arguendo* that the ALJ failed to consider Dr. Junga's opinion at all, the Court finds the ALJ's error harmless, because there is no reasonable likelihood that the ALJ's consideration of Dr. Junga's opinion would have changed the administrative outcome."); *Gemmell v. Comm'r of Soc. Sec.*, 8:16-CV-1014 (CFH), 2017 WL 3328237, at *5 (N.D.N.Y. Aug. 2, 2017) ("[F]ailure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome.").

This is so because as the Commissioner notes, the jobs relied upon by the ALJ at step five each have a people rating of eight, which is consistent with "rare" interaction with co-workers, supervisors, and the public. *Waledahmad A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-398-DB, 2024 WL 3722697, at *8 (W.D.N.Y. Aug. 8, 2024) ("In fact, all three unskilled jobs identified by the VE have a 'People' level of 8, meaning they require no significant people contact."). Specifically, a Level 8 interaction under the Dictionary of Occupational Titles ("DOT") measures:

> Taking Instructions—Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless

clarification of instructions or orders is needed). Helping applies to 'non-learning' helpers.

*See* DOT, Appendix B, 1991 WL 688701 (1991). Here, the vocational expert identified six representative occupations Plaintiff would be able to perform and each has a "Level 8" for people skills. *See* Cleaner, window (DOT 389.687-014); Pipe stripper (DOT 575.687-026), Sweeper-cleaner, industrial (DOT 389.683-010); Farmworker, diversified crops II (DOT 407.687-010); Cleaner, housekeeping (DOT 323.687-014); Cleaner, commercial or industrial (DOT 381.687-014).

As a result, "any failure by the ALJ to include a specific limitation relating to [Plaintiff's] ability to interact with supervisors in the RFC was harmless because the positions identified by the vocational expert do not require more than occasional interaction with supervisors." *Whitehorne v. Comm'r of Soc. Sec.*, No. 19-CV-0256MWP, 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020) ("Each of the positions identified by the vocational expert lists the type of social interaction required as 8, indicating that the degree of relation to people is 'not significant.'. . . Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors."); *see also Jason S. v. Comm'r of Soc. Sec.*, No. 21-CV-101-RJA, 2023 WL 4991928, at *4 (W.D.N.Y. Aug. 4, 2023) ("As the Commissioner correctly notes, the performable occupations identified by the VE and listed in the ALJ's decision—a photocopy machine operator, marker, and router—all involve 'level 8' interaction. . . . Therefore, any error by the ALJ in failing to include a mental RFC limitation relating to interaction with supervisors is harmless, and remand is not warranted on this ground." (citations omitted)); *Samantha T. v. Comm'r of Soc. Sec.*, No. 20-CV-201-FPG, 2021 WL

3566597, at *4 (W.D.N.Y. Aug. 12, 2021) ("Therefore, even if the ALJ erred by failing to restrict Plaintiff to limited interactions with supervisors, the error is harmless because inclusion of that restriction would not alter the ALJ's findings at steps four and five."); *Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394-MJR, 2019 WL 3369255, at *7 (W.D.N.Y. July 26, 2019) ("Moreover, any failure by the ALJ to account for Dr. Gbadamosi's opinion regarding plaintiff's ability to interact with supervisors was harmless because the jobs cited by the VE involved only occasional interaction with supervisors. . . . Even though the ALJ did not specifically include a supervisor restriction in the hypothetical presented to the VE, case law reflects that each of these jobs requires only occasional interaction with supervisors.").

Accordingly, because any alleged error is harmless, remand is not required.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 25, 2025
        Rochester, New York